# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs September 11, 2007

## STATE OF TENNESSEE v. ANTONIO LAMAR OSBORN

**Direct Appeal from the Circuit Court for Madison County**
**No. 04-772     Roger A. Page, Judge**

---

**No. W2007-00217-CCA-R3-CD  - Filed October 29, 2007**

---

The defendant, Antonio Lamar Osborn, appeals the revocation of his probation, arguing that the trial court lacked jurisdiction to modify his probation order because more than thirty days had elapsed since the entry of the order.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES and JOHN EVERETT WILLIAMS, JJ., joined.

Paul E. Meyers, Assistant Public Defender, for the appellant, Antonio Lamar Osborn.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and James W. Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

In November 2004, the defendant pled guilty in the Madison County Circuit Court to aggravated burglary, vandalism under $500, and driving while unlicensed in exchange for an effective six-year-eleven-month-twenty-nine-day sentence, suspended to intensive supervised probation.  Among the terms of the defendant's probation were that he complete an outpatient substance abuse program and anger management classes, report regularly to his probation officer, perform 100 hours of community service, and not engage in "any assaultive, abusive, threatening or intimidating behavior."

On March 3, 2005, a probation violation warrant was issued alleging that the defendant had failed to report to his probation officer on five occasions, failed to report to substance abuse

treatment on two occasions, missed curfew on one occasion, failed to perform community service work for the month of January 2005, failed to timely report a change of address, and tested positive for cocaine on January 18, 2005. On October 31, 2005, an amended probation violation warrant was issued alleging that, in addition to the above violations, the defendant had also absconded from probation supervision. On September 15, 2006, a revocation hearing was held at which the defendant, waiving his right to a full hearing, admitted that he was guilty of the violations contained in the warrants. The defendant also admitted that he had a serious drug problem. At the recommendation of the State, the trial court revoked and then reinstated the defendant's probation, ordering that the probationary period begin anew and that, as a new condition of probation, the defendant had to successfully complete a long-term inpatient drug treatment program and remain in jail while waiting for a bed in such a facility to become available.

In January 2007, another probation violation warrant was issued alleging that the defendant had violated the terms of his probation by engaging "in an intimidating behavior toward his probation officer through letters he wrote to her in jail while awaiting for a bed to become available for substance abuse treatment." At the January 12, 2007, revocation hearing, the defendant's probation officer, Dinah Ellison, identified the letters the defendant had sent her from jail, which were admitted as a collective exhibit to the hearing. Ellison said that the defendant requested in some of the earlier letters that his probation be revoked. She said that in a letter dated November 27, 2006, the defendant called her a "bitch" and informed her that he would run away from any treatment center in which he was placed. She stated that the defendant also sent her a page torn out of the Bible on which he had written obscenities.

Ellison testified that she was attempting to get the defendant enrolled in a drug treatment center during the time he sent her the letters. She said that the defendant had been placed on the waiting list at "Jack Gean Shelter" and that she called weekly to check on his status. When she last checked, approximately one week prior to the hearing, the defendant was ninth on the waiting list. On cross-examination, Ellison testified that she had also tried to get the defendant admitted to "Synergy" in Memphis. She said that officials at Synergy were aware of the defendant's charges and sentence and were in the process of evaluating his case. Finally, she testified that the defendant never threatened to do anything to her in the letters.

The defendant's November 27, 2006, letter to Ellison states in pertinent part: "This will be my last time trying to reason with you. Okay, I'll sit in jail and collect 'jail time' for my future incarceration in TDOC. But in the meantime I'm already planning what I'm going to do when I arrive at Jack Gene in Savannah."

The defendant wrote the next portion of the letter in large block printing, using all capital letters: "I PROMISE YOU BITCH I WON'T BE THERE A GOOD HOUR BEFORE I RUN OFF FROM THAT MOTHERFUCKER. AND BITCH YOU WON'T SEE ME AGAIN UNTIL YOU CHECK THE 6:00 NEWS. I BELONG IN PRISON. I DON'T WANT LONG-TERM TREATMENT!! FUCK THAT BITCH!!"

In either a continuation of that letter or in another undated letter, the defendant wrote that he agreed to the State's "so-called 'deal'" only because he was led to believe he would be transferred to a treatment center within a matter of weeks. The defendant stated that he now realized that Ellison had conspired to entrap him into admitting the probation violations. He informed her that he planned to spend his time in prison learning criminal law and "learning from [his] fellow inmates how to be better the next time." He ended with the following words:

> There is no God except Satan and no treatment center available to me and therefore there is evidently no hope for me to do what is supposedly "good" in this world.

> And one day you must be held accountable for what you've helped them to do to me along with my daddy who abused me when I was a child. I trust Satan to keep his promise. Matthew 4:9 And He said to him, "All these things I will give you if you will fall down and worship me."

The last two pages of the letter include drawings of two upside down crosses with the number "6," containing an eyeball inside the circle of the "6," written at three points on the cross. The first drawing is accompanied by the words "SATAN FOREVER," "Lucifer," "devil," and "evil." The second drawing depicts a body hanging head down from the cross with blood dripping from its head and arms. This drawing is accompanied by the names "CAIN," "HITLER," "JEFFREY DAHMER," "JEZEBEL," "CHARLES MANSON," and "LUCIFER" written in capital letters, and the names "Denmark," "Marilyn," and "Ellison" written in lowercase letters vertically beneath the "D," "M," and "E" of "DAHMER."

In his last letter, dated December 18, 2006, the defendant apologized to Ms. Ellison for his previous letters and asked for her forgiveness. At the revocation hearing, the defendant repeated his apology to Ms. Ellison and informed the trial court that he was "truly sorry" for what he had done. He stated that he had acted out of frustration and stress after weeks of not receiving any response from Ms. Ellison to his inquiries regarding the status of his case.

At the conclusion of the hearing, the trial court found that the defendant's letters did not amount to a crime under the harassment statute, as had been argued by the State, but that their tone and message, particularly the defendant's statement that he would run away from a treatment center, indicated that the defendant would not comply with the terms of probation. The trial court, therefore, revoked the defendant's probation and ordered that he serve his sentence in incarceration. The trial court characterized its actions as an amendment of its previous order, in which it had revoked and reinstated the defendant's probation:

> [A]s the Court I am charged with the responsibility to find that each person that I put on alternative sentencing, be it Community Corrections or probation, is a proper candidate.

. . . .

Since that's a C felony, of course, the Court put him on probation to start with and ordered him to attend anger management, gave him status checks to show that he would attend the anger management.

He never completed that, which is an indication to me that he cannot comply with the conditions of probation. In fact, the last time I had a status check for him on March the 7th he didn't show up for it so I issued a capias for his arrest.

We didn't hear from him then for many months, over a year. And finally the probation revocation warrant was served on him.

He came in to court, was revoked and reinstated and put back on probation. . . .

And while he was awaiting long-term treatment he -- Now, I've got these letters up here and because of the co[a]rse language I'm not going to read everything for the record. But in one basically he tells Ms. Ellison that he's not going to stay in treatment for an hour before he'll run off and the next time she'll see him will be on the six o'clock news. And there's several other incidents like that in here showing that he's not a candidate for treatment.

So based on the evidence I've heard, I think the proper legal outcome is for me to go back and amend that previous order, because obviously there were plenty of grounds to revoke him on the previous matter, plus he has further indicated to me that he is not a candidate for probation.

. . . .

So I'm going [to] show an amended probation revocation order and show that it amends the order of 9/15. It will be a full revocation and finding based on this hearing that he's violated the terms of his probation; I'll again state that what I've heard today along with what we heard as it was announced in court on September 15th.

## ANALYSIS

On appeal, the defendant cites State v. Moore, 814 S.W.2d 381 (Tenn. Crim. App. 1991), to argue that the trial court lacked jurisdiction to amend the September 15, 2006, probation order because more than thirty days had elapsed since the entry of the order. In essence, he argues that the trial court improperly relied on his previous probation violations because there was insufficient evidence presented at the January 12, 2007, revocation hearing to show a new violation of probation.

In support, he asserts that the trial court found that "the only allegation alleged [in the January 2007 warrant] did not rise to a crime under the harassment statute." The State responds by arguing that Moore supports its position that the trial court had jurisdiction to revoke the defendant's probation upon a finding that he violated the terms of the probation. The State asserts that the defendant's violation consisted of his threatening and intimidating letters to Ms. Ellison and that "a careful reading of the record clearly demonstrates that the trial court revoked the defendant's probation based on the probation violation warrant issued on January 3, 2007."

The defendant in Moore appealed the trial court's order that he pay restitution as a condition of probation, arguing that the trial court lacked jurisdiction because the order was not entered until more than thirty days after the entry of the judgment. Id. at 382. In analyzing the issue, this court wrote:

> Obviously, a sentencing order, including one involving probation, is a judgment which becomes final after thirty days in the same manner as other judgments in criminal cases. See T.C.A. §§ 40-35-401(a) and -402(a); T.R.A.P. 3(b) and 4(a). Although under present law there are many instances in which the trial court maintains jurisdiction over the defendant and his sentence, relative to its length and manner of service, such jurisdiction is limited to that authorized by statute or rule. See, e.g., Tenn. R. Crim. P. 35; T.C.A. §§ 40-35-212(c) and (d), -306 through -316, and -319. However, a reading of these various laws and rule indicates that the only jurisdiction to amend a sentence in a manner more onerous than that initially imposed stems from probation violations, T.C.A. §§ 40-35-308(b), -310 and -311, violations of jail or workhouse rules, T.C.A. § 40-35-314(d), or community corrections program modifications or violations, T.C.A. § 40-36-106(e)(2) and (3). None of these circumstances apply in this case.

Id. at 383.

As we recognized in Moore, our statutes expressly grant the trial court the authority to revoke and annul a defendant's suspension of sentence upon a finding by a preponderance of the evidence that the defendant has violated the terms of his or her probation. See Tenn. Code Ann. §§ 40-35-310, -311 (2006); see also State v. Hunter, 1 S.W.3d 643, 646 (Tenn. 1999). The revocation of probation lies within the sound discretion of the trial court. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991); State v. Stubblefield, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). To show an abuse of discretion in a probation revocation case, "a defendant must demonstrate 'that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'" State v. Wall, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) (quoting State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). The proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial court to make a conscientious and intelligent judgment. Harkins, 811 S.W.2d at 82 (citing State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984)).

Although the trial court referred to the defendant's previous probation violations and spoke of "amending" the September 15, 2006, probation order, it also referred to the defendant's letters to Ms. Ellison and the testimony it heard at the January 12, 2007, hearing as support for the revocation of probation. We agree with the State that this latter evidence, despite not rising to the crime of harassment, was sufficient to show that the defendant had violated the terms of his probation as alleged in the January 2007 revocation warrant by engaging "in an intimidating behavior toward his probation officer through letters he wrote to her in jail while awaiting for a bed to become available for substance abuse treatment." We conclude, therefore, that the trial court did not abuse its discretion by revoking the defendant's probation.

## CONCLUSION

Based on our review, we conclude that the trial court acted within its discretion in revoking the defendant's probation. Accordingly, the judgment of the trial court is affirmed.

_____
ALAN E. GLENN, JUDGE